James Milton LEWIS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17611.

United States Court of Appeals Eighth Circuit.

Feb. 3, 1965.

Rehearing Denied March 5, 1965.

Thad C. McCanse, Kansas City, Mo., made argument for appellant and filed brief.

Clifford M. Spottsville, Asst. U. S. Atty., Kansas City, Mo., made argument for appellee and filed brief with F. Russell Millin, U. S. Atty., Kansas City, Mo.

Before MATTHES, BLACKMUN, and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

Appellant was tried, convicted, and sentenced on six (6) counts of a twelve (12) count indictment for the "possession" of narcotic drugs on two separate occasions in violation of § 174, Title 21, U.S.C.A.; "purchase" of same in violation of § 4704(a) of Title 26, U.S.C.A.; and "sale and transfer" thereof in violation of § 4705(a) of Title 26, U.S.C.A.[1] His timely motion for a new trial being denied and sentence imposed, appellant's trial court refused him leave to perfect an appeal *in forma pauperis*. On subsequent application made to this Court we granted him such leave—restricted to a consideration and determination whether there was a prejudicial violation of the so-called Jencks Act (18 U.S.C.A. § 3500) during the course of appellant's trial; and the sufficiency of counts IX and XII of appellant's indictment to charge an offense under § 4705(a), supra.[2]

We first consider appellant's assignments of error as to the sufficiency of his indictment. Count IX thereof is

1. Appellant was jointly indicted with one Roxanne Yvonne Haney, who was charged in all twelve (12) counts of such indictment as a consequence of four (4) separate transactions in narcotic drugs. She entered a plea of guilty to all such charges, and thereafter testified as a witness on behalf of the Government at appellant's trial.

2. The sentence imposed on defendant was: "for a period of three (3) years on each of Counts 7, 8, 10 and 11; and, a period of five (5) years on each of Counts 9 and 12; said sentences imposed on Counts 9 and 12 to be served consecutively to each other, and said sentences imposed on Counts 7, 8, 10 and 11 to be served concurrently with each other and concurrently with sentences imposed on Counts 9 and 12, for a total sentence of imprisonment of ten (10) years; without costs."

set forth in the footnote.[3] Count XII is identical therewith, except as to date and quantity of narcotic drug alleged.

It is appellant's contention that since the person to whom he is alleged to have "transferred" narcotics as charged in counts IX and XII, ante, were not named therein; and the evidence adduced at his trial established that he made "two" transfers of narcotic drugs, one to Charles G. Hill, an undercover agent of the Bureau of Narcotics, and the other to his co-defendant, Roxanne Yvonne Haney, his convictions on such counts cannot stand because under that state of the record its cannot be determined which such transfers the jury considered in arriving at the verdicts of guilt as they did. Therefore, he asserts, the jury was left free to convict him of "selling and transferring" narcotic drugs to either of those persons; and since that is so, he cannot plead his convictions on either of the above counts as a bar to a subsequent prosecution for the same offenses. As a consequence, appellant claims counts IX and XII of his indictment do not meet the test of "sufficiency" set out in United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953), and his conviction thereon must be vacated. In support of the argument so made, appellant primarily relies on Lauer v. United States, 320 F.2d 187 (7 Cir. 1963), where it was ruled in a § 2255 proceeding that an indictment which failed to set forth the name of the person to whom an unlawful sale of narcotics is made, was bad and insufficient to warrant Lauer's conviction. In so ruling, it should be noted that the Court in the Lauer case found it necessary to distinguish Debrow, supra, in reaching the conclusion which it did in that collateral proceeding.

"We have repeatedly held that failure to name the purchaser of narcotics in an indictment is not a fatal defect vulnerable to a § 2255 attack." Pellom v. United States, 333 F.2d 766 (8 Cir. 1964); Taylor v. United States, 332 F.2d 918 (8 Cir. 1964); Adams v. United States, 333 F.2d 766 (8 Cir. 1964), cert. den. 85 S.Ct. 650; Jackson v. United States, 325 F.2d 477 (8 Cir. 1963). We believe the reasoning set forth in the above-cited authorities is especially applicable to appellant's assertion of error here made. As a consequence it is not necessary for us to expatiate thereon. In Debrow, supra, it was ruled the name of the person administering the oath was not an essential element of the crime of perjury there charged. Here, the name of the person to whom an illegal transfer of narcotics was made is not an essential element of the offense denounced in 26 U.S.C.A. § 4705(a). In either case, of course, the name of such person must come out in the proof adduced.

A plea of former jeopardy is in no sense limited to the terms of an indictment alone. Should appellant ever need to plead either of his convictions on count IX or XII of his indictment, ante, as a bar to any subsequent prosecution, he can do so from the record made at his trial. Cf. Gravatt v. United States, 260 F.2d 498 (10 Cir. 1958).

In the light of the foregoing, there is no merit to appellant's contention of insufficiency of counts IX and XII of his indictment to sustain his conviction, as he here contends.

Appellant's claim of Jencks Act (§ 3500, Title 18, U.S.C.A.) violation is premised thus:

Charles G. Hill, an undercover agent of the Bureau of Narcotics, was called as

---

3. "That on or about April 28, 1961, at Kansas City, in the Western Division of the Western District of Missouri, Roxanne Yvonne Haney, a/k/a Orietha Yvonne Haney, and James Milton Lewis did knowingly, wilfully, unlawfully and feloniously sell and transfer and cause to be sold and transferred a narcotic drug, to wit, 675 milligrams Heroin Hydrochloride, more or less, the same not then and there being sold in pursuance of a written order to the person to whom sold, on a form issued in blank for that purpose by the Secretary of the Treasury of the United States, contrary to law, in violation of Section 4705(a), Title 26, United States Code."

a witness by the Government and testified at appellant's trial, as follows: On April 27, 1961, he met Roxanne Yvonne Haney, and talked to her about narcotics. The next day he made arrangements with Miss Haney to buy some heroin. For that purpose he then gave Miss Haney $51.00 of previously marked money. Later the same day, Miss Haney got out of an automobile which was also occupied by appellant. She walked up to Hill and delivered the narcotics to him. Subsequently, appellant left the automobile, approached Hill and had a discussion with him about the quality of the narcotics he had just received. On May 2, 1961, Hill returned to Miss Hanney's apartment and, in the presence of appellant, made arrangements to purchase more heroin. Hill again gave Miss Haney some previously marked money. Later that night, actually in the early morning hours of the next day, Miss Haney and appellant returned to Miss Haney's apartment and told Hill they could not get the narcotics. Upon Hill's demanding return of his money, appellant and Miss Haney left the apartment and, on their return, Haney handed Hill the heroin he then purchased. Appellant was then present and immediately after delivery of the narcotics had a conversation with Hill as to how to "cut" the same.

After Witness Hill's direct testimony, the following took place during the course of his cross-examination:

"Q. Did you keep notes and make reports of your activities as you went along?

"A. (Hill): Yes, sir, I did.

"Q. And did you review those notes before testifying today?

"A. Yes, I did.

"Mr. McCanse (Attorney for Defendant): If it please the Court, I would like to move to see the statement that was made by the agent.

"The Court: He hasn't used it for any purpose.

"Mr. McCanse: He said he reviewed it.

"The Court: Yes, but he hasn't used them in testifying.

"Q. (By Mr. McCanse): Well, did you use the notes to refresh your recollection before coming here to testify?

"A. Yes, sir, I did.

"Q. And you had several dates in mind—this all happened in April and May of this year which is some six months ago?

"A. Yes, sir.

"Q. And was it necessary then for you to refer to your reports in order to be able to testify to the events that you mentioned today?

"A. Only to actually designate the time of the day. As far as the events, I would remember those.

"Mr. McCanse: Well, I would like to investigate the notes.

"The Court: If you want the Court to look at them, I will look at them and see if there is anything different from the testimony, but I see no reason why he should give you his notes.

"Mr. McCanse: Well, I would like the Court to look at them."

After examining a lengthy file of the Bureau of Narcotics (219 pages) covering its entire investigation, and statements of persons other than Hill, leading up to the arrest and trial of appellant for violation of the narcotic laws, appellant's trial court made the following remark in open court:

"The Court: I would like to say I have gone through this rather great mass of information and I find nothing that is different in the testimony than what the witness testified to."

Thus, the state of the record before us which appellant relies on to establish his claim of Jencks Act violation here made.

█ Before considering the specifics of appellant's assigned error, we think

the following observation of applicable law should be made. It is now well settled that individual "notes and reports" of agents of the Government, made in the course of a criminal investigation, are the proper subject of inquiry and subject to production under the Jencks Act, supra. See, Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed. 2d 574 (1961); Karp v. United States, 277 F.2d 843 (8 Cir. 1960); Holmes v. United States, 271 F.2d 635 (4 Cir. 1959); United States v. Berry, 277 F.2d 826 (7 Cir. 1960); United States v. Sheer, 278 F.2d 65 (7 Cir. 1960). It is clear from such cited authority, it is no part of the trial court's function to speculate as to whether or not an otherwise producible statement under the Jencks Act will be of any use to the defendant for impeachment purposes. Clancy v. United States, supra; Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Ogden v. United States, 303 F.2d 724 (9 Cir. 1962). The function of the trial court under § 3500, Title 18, U.S.C.A., is limited purely to the question of *producibility*, i. e. * * * is the document a "statement" under the Act? Does it relate to the subject matter of the witness' testimony? The use of extrinsic evidence to determine that matter is permissible, and generally the Court should determine the same at a hearing out of the presence of the jury. Scales v. United States, supra; Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). Once *producibility* is established the defendant has an absolute right to the statement, or, in the alternative, to have the testimony of the witness stricken if the Government refuses to comply, and failure to so order is reversible error. Clancy v. United States, supra; United States v. Sheer, supra; United States v. Berry, supra.

With the above general consideration in mind, we now consider the specific point here raised by appellant. It is apparent from the foregoing abstraction from the record that the District Court's handling of defendant's re-

quest for production under the Jencks Act did not meet the standards set out in that Act and as considered in the above-cited authorities. Notwithstanding, no motion was made at appellant's trial, to strike the testimony of Witness Hill. The foregoing being so, the question then is, what disposition should be made of appellant's assignment of error as to Jencks Act violation as here made. True, no "ritual of words" is required to invoke the Jencks Act (Howard v. United States, 108 U.S.App.D.C. 38, 278 F.2d 872 (1960). But, from what is above revealed, it does not appear that the District Court was afforded a clear and legally suitable request to make a ruling, nor did it specifically rule, on the applicability of the Jencks Act after appellant's request for production of Hill's reports. Cf. United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2 Cir. 1960). From the record here, it appears appellant's counsel was satisfied by the District Judge's examination of the gross records before it and acquiesced in the statement which the Court made after so doing. In Foster v. United States, 308 F.2d 751 (8 Cir. 1962) this Court had occasion to say:

> "It is * * * incumbent upon the defense to be definitive in their request (made under the Jencks Act), at least to the extent of limiting their demands to 'statements' (producible thereunder) before there is any duty on the prosecution or the court to seek out and produce such material." (Par. added.)

That is to say, it is defendant's responsibility to invoke the Jencks Act at the proper time and in a proper manner so that a trial court will have a specific opportunity to rule on the applicability of his request made thereunder. Cf. Ogden v. United States, supra; United States v. Klinghoffer Bros. Realty Corp., supra. There is such a thing as abandonment of a request for production under the Jencks Act which forecloses any issue being made in respect thereto on appeal. Cf. Harrison v. United States, 115 U.S.App.D.C. 249, 318 F.2d 220

(1963); and United States v. Paroutian, 319 F.2d 661 (2 Cir. 1963). The language of the latter case is particularly apropos here, where, on page 664, the Court stated:

"Having led the district court to believe that he was abandoning the issue of the producibility * * * appellant can hardly be heard to press the issue here."

This, we believe, is close to the present situation.

Notwithstanding, "it (is) our duty to correct clear error" where shown to exist. United States v. Yellow Cab Co., 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150. Therefore, we think the only equitable treatment to be given to appellant's assignment of error as to Jencks Act violation under the situation here, is to consider the same from the standpoint of the "harmless error" doctrine, as was done in Rosenberg v. United States, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959), and Karp v. United States, supra. This is so, for we are mindful of what Mr. Justice Frankfurter said in his concurring opinion in Johnson v. United States, 318 U.S. 189, 1. c. 202, 63 S.Ct. 549, 1. c. 555, 87 L.Ed. 704:

"In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution."

Therefore, though appellant's claim of Jencks Act violation was probably properly grounded (cf. Holmes v. United States, supra), the query is: Was failure of the District Court to comply with appellant's counsel's request to "see the statement that was made by" Witness Hill, standing alone, sufficient to establish prejudicial error where no motion to strike Hill's testimony was made, so that appellant's conviction of the charges made against him, ante, cannot stand;

or was that non-prejudicial and harmless error, considered from the vista of other proof which was competently adduced at appellant's trial and received without objection which establishes his guilt in respect to both charges here made against him beyond a reasonable doubt? In so considering that matter we review the evidence adduced at appellant's trial most favorable to the Government (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Accardo, 298 F.2d 133 (7 Cir. 1962)); and resolve evidentiary conflicts therein in its favor. United States v. Carter, 326 F.2d 351, 352 (7 Cir. 1963). That may be easily accomplished in the case at bar because of an "Agreed Statement of Facts" which has been lodged with this Court in relation to our consideration of appellant's request for leave to prosecute the instant appeal *in forma pauperis*. It is there stipulated that testimony adduced at appellant's trial *aliunde* that given by Witness Charles G. Hill was as follows:

"Witness Haney (born January 15, 1943) stated that she was living in common law with Lewis, having known him for about three years and that she had made sales of heroin to Agent Hill for Lewis. She testified that she was a user of heroin (off and on for three years), which supply she received from Lewis, and it was Lewis who started her on narcotics. She stated that on each occasion in question the money she received from Hill she gave to Lewis, who purchased heroin, which he in turn gave her for delivery to Agent Hill. She reaffirmed Hill's testimony concerning the two sales on April 28 and May 3, 1961, other than the conversations Hill had with Lewis when she was not present. She testified further that previous to the date of the trial she had refused to implicate Lewis relative to these narcotics sales. She went on to say that having thought it over seriously she had decided to tell the

truth about it as Lewis did not mean her any good. On cross-examination she admitted that she had previously told counsel for Lewis that he (Lewis) had no connection with the sale of narcotics. It was also brought out in her testimony (either on direct or cross-examination) that she had entered a plea of guilty to twelve counts of the indictment in which she was jointly charged with narcotics violations along with Lewis. She further stated that there were no tax stamps on the packages that the narcotics were in, nor was there any order blank as prescribed by law for the sale of narcotics.

"Other witnesses for the government were Agents Adamski and Ennenbach, who supported Hill's testimony as they viewed his movements and the movements and actions of Lewis and Haney as they maintained surveillance during these transfers of narcotics. They testified further relating to the identity of the narcotic evidence and its subsequent custody, field test and transfer to the government chemist.

\*      \*      \*      \*      \*      \*

"The only witness for the defendant was the defendant Lewis, himself, who testified generally that he had no knowledge of and no connection with the sale of any narcotics. His cross-examination was limited merely to showing that he had been convicted of some prior offenses in the State Court of Missouri, none of which were narcotic violations."

█ In the light of the above uncontradicted facts established at appellant's trial, and from a consideration of the whole record before us, we think the District Court's action and conduct in relation to the Jencks Act claim of error here made can only be considered and deemed to be harmless. Appellant's guilt of the charge as made against him in counts IX and XII of his indictment, supra, was established beyond a reasonable doubt by competent testimony other than that as given by Witness Hill.

Therefore, the judgment and sentences here appealed from should be, and the same are,

Affirmed.

### ADDENDUM

We are obliged to Thaddeus C. McCanse, Esq., a member of the Missouri Bar and the Bar of this Court, for accepting defense of appellant in the District Court and his appeal in this Court, without remuneration. He has competently and with keen legal acumen protected every right this appellant could possibly have in defense of the charges made against him in the case at bar.